Zahra Khoury SBN 231065
zkhoury@zrawa.com
**RAWA LAW GROUP, APC**
5843 Pine Avenue
Chino Hills, CA 91709
Telephone: (909) 393-0660
Facsimile:  (888) 250-8844

Attorneys for Plaintiffs
**CARL E. JONES and CHRISTOPHER HICE**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL E. JONES, an individual, CHRISTOPHER HICE, an individual<br><br><br>      Plaintiffs,<br><br>      vs.<br><br><br>CITY OF RIALTO, a municipal corporation,   RANDY DE ANDA, individually and in his capacity as the Chief of Police for the RIALTO Police Department; and DOES 1 THROUGH 20 inclusive,<br><br><br>      Defendants. | Case No.: _____<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF INDIVIDUAL CIVIL RIGHTS AND LIBERTIES, WITH SUPPLEMENTAL STATE LAW CLAIMS;**<br><br>1. 42 USC § 1983 (First Amendment)<br>2. 42 U.S.C. §1983 (Violation of Due Process)<br>3. Supplemental State Claims- Retaliation (DFEH)<br>4. Supplemental State Claims (Violation of POBR)<br><br>**DEMAND FOR JURY TRIAL**<br>[F.R. Civ. P. Rule 38; C.D. Cal. Local Rule 38-1] |

# I.

## INTRODUCTION

1.     This case involves the unlawful retaliation against RIALTO Corporal CARL E. JONES ("JONES"), and RIALTO Sergeant CHRISTOPHER HICE ("HICE") (collectively "Plaintiffs") for the exercise of their constitutional individual civil rights and liberties of free expression and freedom of association, by CITY OF RIALTO ("CITY" or "RIALTO") and RIALTO POLICE CHIEF RANDY DE ANDA (DE ANDA).  JONES and HICE have had an honorable career with no blemishes until DE ANDA took over the Rialto Police Department approximately in or about January 2016. DE ANDA targeted those who spoke up against him and against the internal affairs unit that DE ANDA was in charge of. DE ANDA targeted those that spoke up against illegalities within the police department. Since his appointment, DE ANDA hired and /or promoted family members, and gave preferential treatment to those with whom he has had a personal relationship; in lieu of making decisions based on merit, and qualifications, DE ANDA allowed his own personal agenda and vendetta against a particular group, to blind his judgment.

HICE and JONES spoke up about the lack of integrity within the Rialto Police Department and spoke up about deletion of evidence, and evidence tampering.

In retaliation, JONES was wrongfully retaliated against by, among other things, being terminated from his sixteen year employment.  HICE was stripped of his duties in SWAT, lost 3% special assignment stipend, lost this take home car and  compensation time and on call time,  and placed on a Performance Improvement Plan after twenty two years of service, and given a letter of reprimand  based on fabricated facts.

Moreover, JONES and HICE were targeted because of the "band of Brothers" they had with GLEN ANDERSON (ANDERSON), who had brought a Federal Action against RIALTO et al. in Federal Court, case No. 5:16-cv-01915-

JGB-SPx, for 42 USC 1983 violations (Freedom of Speech) among other causes of action. JONES and HICE testified truthfully in favor of  GLEN ANDERSON. DE ANDA targeted those close to ANDERSON and basically was trying to silence everyone under the guise of IA confidentiality orders.

As a result of the Defendants' retaliatory actions, Plaintiffs have brought this lawsuit seeking damages including punitive damages and injunctive relief for personal injury and economic losses they have suffered.

## II.

## JURISDICTION AND VENUE

2.     Plaintiffs' action is brought under 42 U.S.C. §1983, which states in pertinent parts: "*Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…*"

3.     This Court has original subject matter jurisdiction because the matter involves allegations of violations of the United States Constitution. Specifically, Jurisdiction is bestowed on this Court by 28 U.S.C. § 1343(3) which authorizes this Court to "redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States…." and by 28 U.S.C . § 1343(4) which provides for the protection of civil rights.

4.     This Court has supplemental jurisdiction over state law claims under 28 U.S.C. §1367.

5.     This Court is bestowed with further and proper authority to provide

declaratory and injunctive relief in this case pursuant to 28 U.S.C. §§2201 and 2202.

6.      Venue is proper in the Central District of California in that the wrongs alleged herein occurred within the City of RIALTO, within the Central District.

## III.

## PARTIES

7.      Plaintiff  CARL E. JONES (JONES),  was, at all times relevant to the allegations herein, an employee of the  CITY OF RIALTO, employed as a police officer within the CITY OF RIALTO POLICE DEPARTMENT. As such, he was and is entitled to the protections of the Public Safety Procedural Bill of Rights Act (Government Code Sections 3300, et seq.). Plaintiff JONES held the rank of a Corporal police officer at all material times relevant to the allegations herein.

8.      Plaintiff CHRISTOPHER HICE (HICE), was and is, at all times relevant to the allegations herein, an employee of the CITY OF RIALTO, employed as a police officer within the CITY OF RIALTO POLICE DEPARTMENT. As such, he was and is entitled to the protections of the Public Safety Procedural Bill of Rights Act (Government Code Sections 3300, et seq.). Plaintiff HICE held the rank of Sergeant at all material times relevant to the allegations herein.

9.      Defendant CITY OF RIALTO is a municipality organized and existing under the laws of the State of California and wholly located within the County of San Bernardino, California.

10.      Defendant RANDY DE ANDA (DE ANDA) was at all times relevant during the alleged incidents the Chief of Police for the CITY OF RIALTO POLICE DEPARTMENT, which is a department of CITY OF RIALTO.  As the Department's Head and City's top cop, at all times relevant to the allegations herein, DE ANDA was charged with policy making authority for

all matters alleged herein.  In doing the things alleged to have been done, DE ANDA acted in his capacity as Chief of Police for the City of RIALTO, under color of state law, within the course and scope of his employment, and as an official policy maker for the City.  As a Department Head, DE ANDA was vested with policy-making authority over actions such as the ones at issue in this complaint.

11.    Defendants DOES 1 through 20 is unknown or identified at this time, but are employees of CITY OF RIALTO.  On information and belief Plaintiffs allege that each Doe is in some manner responsible for the wrongs alleged herein, and that each such Defendant advised, encouraged, participated in, ratified, directed, or conspired to do, the wrongful acts alleged herein.  When the true names and capacities of said Defendants become known to Plaintiff, Plaintiff will seek relief to amend this Complaint to show the true identities of each said DOE in place of their fictitious names as DOES 1 through 20.

12.    Defendants, and each of them, were the agent, employees and servants of every other Defendant.  Defendants acted in the course and scope of said agency, service and employment at all relevant times.

## IV.
## FACTS COMMON TO ALL COUNTS
### **CARL E. JONES**

13.    JONES' passionate and dedicated journey with law enforcement started in 2000; JONES did not have a sponsor; so he worked hard and put himself through the San Bernardino Valley College Extended Basic Law Enforcement Academy (Class 017) in 2000.  After the academy he graduated number 10 out of 24 attendees, and was hired as a reserve police officer for the CITY OF RIALTO on June 25th 2001.  After working numerous hours as a

reserve police officer, JONES was hired as a full time police officer on or about August 6, 2002.

14.    JONES started receiving service related "Atta boys" from department members and community members beginning in November 2002.  Based on his performance, JONES was selected for and appointed to be a Field Training Officer (FTO) on November 7, 2003, and served in that capacity for three years until he was selected for and assigned to the Investigations Division in 2006. During his short tenure on patrol, before JONES was assigned to the Investigations Division, he received his first Cal-ID "Hit award" for fingerprint ID of suspects who committed crimes and left their prints behind (December 2003).   JONES also received multiple CVC 10851 awards for excellence in stolen vehicle recovery and arrests. JONES has been with the CITY OF RIALTO POLICE DEPARTMENT for almost 16 years.  JONES has been and is a highly decorated and well respected within the department from the rank and file and amongst the citizens of Rialto.  Throughout his tenure, JONES has received; two Bureau Commander Accommodations, eleven Chief's Accommodations, six Sergeants Accommodations,   our   Lieutenants Accommodations,   2014-2015 MADD award recipient,  2015-2016 MADD award recipient. JONES also earned his Associates Degree, with Honors, in 2012 from Golden West College in the Criminal Justice program.

15.    JONES attended FTO update school in 2005 and was also appointed to the Rialto Police Department Special Weapons and Tactics (SWAT) team.  In the same year, JONES received a SWAT Unit Citation 2005-SWAT and a meritorious service award from VFW 2006-SWAT.  JONES proudly served on the SWAT team until 2012, for seven 7 years.  Four of the seven years spent on the team, JONES served as a SWAT FTO, training and mentoring newly assigned members of the tem.

16.     JONES    was named as Police Officer of the Year in 2005, with recognition by U.S. Congress, State Assembly, State Senate, and Rialto City Council.

17.     After being assigned to Investigations Division in 2006, in just six short months and based on hard work and dedication, JONES was assigned to the very prestigious "Homicide unit".    JONES worked in that capacity for approximately three and a half years.

18.     JONES was promoted to the rank of Corporal on February 12th 2012, with Congressional Recognition from Congressman Joe Baca Sr.  JONES was promptly selected for and sent to FTO update school 2012, after being appointed to his second stint as an FTO.  During both stints as an FTO, he was responsible for training twenty-five, plus, newly hired police officers, some of whom have risen through the ranks and are currently working in specialized assignments. JONES resigned from the FTO program in 2015, after serving three additional three years as a FTO.

19.     In August 2015, JONES took the Sergeants exam and again ranked fifth out of fourteen candidates.  In December 2015, DE ANDA, the named successor to retiring Chief (Farrar) called JONES on his personal cell phone and informed him that he  was not selected for the position of Sergeant, because the department was going to go in "Order" of the ranked promotional list.  The first four candidates on the list were selected and JONES was told by DE ANDA that there would be an additional promotion by mid-year 2016 and that "[JONES] was next on the list and would be promoted by midyear".

20.     JONES has known and been friends with GLEN ANDERSON for the entire duration of his sixteen-year career thus far at the Rialto Police Department, to the point where JONES considers ANDERSON a member of his own family and a brother.    JONES and ANDERSON have been to thousands of calls for service together and served for seven years together on the Rialto Police Department SWAT team. JONES and ANDERSON were SWAT partners and

would continually back each other during training and would frequently work together as teammates. From 2004 to the following seven years, JONES and ANDERSON were almost inseparable. In 2008, JONES and ANDERSON suffered the traumatic loss when one of their SWAT brothers S. CARRERA was killed in the line of duty; ANDERSON was on vacation when he was notified of the officer involved shooting and immediately flew home. JONES and ANDERSON supported each other through this tragedy and spoke about it; JONES and ANDERSON along with other SWAT brothers picked up officer CARRERA's body from the San Bernardino County Coroner's office and transported it to the mortuary. JONES and ANDERSON have suffered other losses of their brothers and would continue to speak on a regular basis to keep each other uplifted. JONES' wife and ANDERSON's wife worked together as well for many years at the RIALTO police dispatch center; their families have vacationed together. Shortly after JONES' twins were born, ANDERSON was there and held both of JONES' children in his arms. There was no one ANDERSON was close to, at the police department more than JONES.

## CHRISTOPHER HICE

21.    HICE'S dedicated journey with law enforcement started in 1995; HICE worked with passion and integrity serving the citizens of RIALTO without a blemish in his career.  HICE is currently a sergeant with CITY OF RIALTO

22.    HICE attended the 120th session of the San Bernardino Sheriff's Academy in March of 1995 and was self-sponsored.  While in the academy HICE was hired in June of 1995 by the City of Rialto as a Police Trainee where he graduated tenth out of  thirty-one attendees and then was sworn in as a full time Police Officer for the City of Rialto in August of 1995.  HICE has  received perfect attendance "awards" on several occasions the most recent being the 2016 calendar year.

23.     HICE was the Employee of the Quarter for the third quarter calendar year of 2011. HICE completed field training in a short twelve weeks and started receiving "Atta boys" from community members and department members in April of 1996.  Since his appointment as a Police Officer, HICE has  worked Patrol as an Officer, Corporal, and Sergeant. HICE has worked plain clothes details investigating Gangs, Narcotics, and Theft of Property and sting operations.  HICE has worked as a Homicide Investigator, a Gang Homicide investigator and Major Accident Re-constructionist where he led investigations on high profile cases which resulted in the arrest and conviction of numerous suspects.

24.     HICE has been a Police Department Trainer, (POST Certified) for over twenty years sharing his  training and experience to members of his agency and outside agency's alike.    HICE has reviewed Use of Force cases at the direction of the RIALTO Police Department and has testified as a Use of Force Expert.

25.     HICE has recruited qualified police candidates, oversaw the hiring process and conducted background investigations which have led to hiring and disqualification of individuals.   HICE has trained new officers, parking enforcement officers, traffic officers, gang/narcotic officers, law enforcement techs, advanced/Senior officers and command staff and citizen volunteers as well as Special Weapons and Tactics Personnel.

26.     HICE has served on the RIALTO police department Special Weapons and Tactics team for over twenty years in the capacity of a Crisis Negotiator, Tactical Operator and Tactical Team Leader.  In 2005 HICE received a "Unit Citation for Valor" and a Veterans of Foreign Wars "Meritorious Service Award" for his part in a SWAT Hostage Rescue Operation. HICE has taken part in high profile tactical responses such as the Christopher Dorner attacks and the

2016 San Bernardino Terrorist Attack at the Inland Region Center where he, supported by many others, led the search, contact and arrests of the suspects.

27.     In 2006, HICE received a "Certificate of Special Recognition" from the United States House of Representatives in which he was honored for his years of service with honor and distinction from Congressmen Joe Baca.

28.     HICE has received numerous Letters of Appreciation (ten) from community members, direct supervisor written commendations (twenty-five) fifteen Division Commanders Commendations and seven Chief of Police Commendations for outstanding service to the community and law enforcement community.  HICE received a CVC10851 "award" from the California Highway Patrol and the Automobile Club of Southern California for the location of both occupied stolen vehicles as well unoccupied stolen vehicles.

29.     HICE has received Commendations from the San Bernardino Sheriff's Department (SBSD) Training Center for his dedication and professionalism in training advanced officers in perishable skills and for his part in developing young aspiring law enforcement/fire cadets while assigned a guest Tactical Sergeant at the SBSD Basic Academy in 2012.

30.     HICE has administrated and developed the Electronic Control Device (Taser) program and Body Worn Camera (AXON) program since their conceptions including the national known Use of Force / Body Camera study conducted by the Chief of Police and the University of Cambridge, England, which has revolutionized modern policing.  In 2014, HICE and a partner were sent to the International Chiefs of Police week in Florida to receive the Motorola "Webber Seavey Award" on behalf of the Rialto Police Department for such revolutionary enhancement to law enforcement technology.

31.     Serving as a Police Sergeant since January of 2012, Sergeant HICE is respected as a progressive supervisor and is always giving back, to his

subordinates, his training and experience, to better increase great customer relations, and increase officer survivability in critical incidents.

32.     HICE has served as a Range Master for over fifteen years for the Rialto Police Department. In February 2017, HICE received a Life Saving "award" for his part in rendering aid to two boaters after a violent explosion that sent both survivors, who were in critical condition, to intensive care with major head trauma and other critical injuries.

33.     HICE has dedicated his professional life to the service of the citizens and to the members and the RIALTO police department in which he serves. HICE has continuously been on call and available at a moment's notice to serve the community and agency needs.

34.     HICE has never received any major discipline during his twenty-two years of employment with the Rialto Police Department.

35.     HICE served in the SWAT along with JONES and ANDERSON.

36.     The SWAT team was a designated unit that was specifically trained and equipped to work as a coordinated team to respond to critical incidents including, but not limited to, hostage taking, barricaded suspects, snipers, terrorist acts, and other high-risk incidents.

37.     HICE was a SWAT sergeant and has supervised both JONES and ANDERSON and has known them to be men of integrity and dedication.

38.     HICE, JONES and ANDERSON had a very special bond. More specifically,  the band of brothers  was strong because of the SWAT and the dangers they faced together, such as high risk operations, long surveillance's sitting in a vehicle together for hours, and the  high risk search warrants they served together.

39.     The loss of Officer S. CARRERA strengthened the "**Band of Brothers.**" By way of an example, about two days after officer CARRERA's death, the entire team met at Captain Karol's house. ANDERSON couldn't stop crying. JONES and ANDERSON were the little brothers and HICE was the big

brother. The bond between JONES and ANDERSON was closer than any family member that they know, similar to men in combat together sharing the same hopes and fears as one.  ANDERSON shared things with HICE and JONES that he's never shared with anyone else. By way of an example, HICE and JONES both told ANDERSON on  numerous occasions that they would much rather get shot during an operation then ANDERSON getting shot. HICE appeared to rely on JONES and ANDERSON even more after officer S. CARRERA's death, for fear of losing another brother. Just before each search warrant or high risk operation, they would all gather together and say a word of prayer. That tradition carried onto Inland Valley SWAT and is practiced today.

40.    The closeness of ANDERSON to JONES and HICE and another officer (RENDER) and KAROL, was well known in the department.

## Protected Activity:

41.    GLEN ANDERSON was placed on administrative leave on or about May 4, 2016.

42.    GLEN ANDERSON filed a Department of Fair Employment Housing Complaint and obtained an immediate Right To Sue letter on or about May 27, 2016; GLEN ANDERSON filed a tort claim with the City of Rialto on or about May 27, 2016.

43.    The complaints specifically addressed destruction of exculpatory evidence, and retaliation and harassment and 42 USC 1983 violations.

44.    The Sergeant who was conducting the sham Internal Affairs investigations, Sgt. Mills was specifically named in reference to the conflict of interest and destruction of exculpatory evidence.

45.    The internal affairs department received the complaint on June 2, 2016.

46.    HICE and JONES were vocal about the department's lack of integrity and deletion of evidence. It was extremely concerning to JONES and

HICE that the department has engaged in deletion of exculpatory evidence, a matter of public interest. HICE carried the code of ethics very seriously and carried it on duty and off duty; tampering with evidence is a matter he did not take lightly and along with JONES did express the concern regarding same.

47.     Immediately thereafter, HICE and JONES were targeted.

## Retaliation

48.     On or about June 30, 2016, JONES was ordered to the internal affairs department;

49.     On or about June 22, 2016, HICE was ordered to the Internal Affairs Unit.

50.     HICE and JONES were asked questions regarding conversations they have had, on their own time, referencing the destruction of exculpatory evidence by the department.

51.     Both HICE and JONES answered truthfully in favor of GLEN ANDERSON. Even though HICE explained that he discussed the integrity issue and the destruction of evidence issue, as a 'friend,' and not in his capacity as a sergeant, and that he carries the code of ethics with him off duty and on duty, Internal Affairs at the direction of DE ANDA continued grilling him, falsely claiming they were worried about rumors spreading in the police department.

52.     CITY was using its power of internal affairs investigations as a weapon to issue unlawful orders of confidentiality and order silence!

53.     Moreover, in or about July 2016, RIALTO  Sgt. Andy Shourds announced that he was retiring early and his last day would be September 3, 2016  thus creating another Sergeant (Sgt.) vacancy that DE ANDA would have to fill.

54.     In lieu of promoting JONES to the Sergeant position, DE ANDA self-generated a Professional Standards (Internal Affairs or "IA") investigation

against JONES, related to a DUI pursuit / Arrest. This investigation had already been deemed as closed and deemed **within** policy by two separate Lieutenants (Smith and Hardin) and one Sgt. (Muir).  This information was confirmed to JONES by Captain Andy Karol, the number two in command of the Rialto Police Department.

55.    DE ANDA opened this IA so that it would jeopardize the fact that JONES was still sitting number one on the Sergeant promotion list and he could justify not promoting him; DE ANDA promoted his son in law instead.

56.    DE ANDA placed JONES on administrative leave on or about September 22, 2016; he further referred JONES case to the district attorney's office and to the Sheriff's, both of which rejected the case.

57.    Despite the lack of any evidence supporting the internal affairs investigation, DE ANDA terminated JONES' employment in March 2017. JONES filed a DFEH Complaint and obtained a right to sue on or about October 6, 2016. JONES waived arbitration on or about August 10, 2017 rendering the termination final and filed an additional DFEH Complaint and obtained a right to sue letter on or about August 11, 2017 and filed a tort claims on or about August 11, 2017.

58.    HICE, who has had over twenty years of service in law enforcement, and who had an unblemished reputation, and who had served the citizens of RIALTO, with the utmost ethics and integrity, was given a reprimand in February 2017 and was then stripped of his SWAT duties, stripped of his patrol take home car, provided with a letter of reprimand, and placed on a performance improvement plan after twenty two years of service.

***Additional Facts regarding First Amendment Violations and further retaliation***

59.    On or about August 24, 2016, in the Command Staff Meeting, Chief DE ANDA briefed Command Staff that an anonymous email had been sent to several members of the press, several members of council, and maybe the city

manager, as well as some members of the community. The email discussed wrongdoings that the command staff and employees of the Rialto Police Department have been covering up for many years, and discussed alleged widespread **corruption** amongst the City leaders.

60.     A forensic audit allegedly ensued in September 2016 to find out the author of the email.

61.     Defendant believed ANDERSON or those close to him including HICE and JONES wrote the email that discussed alleged corruption **and wrongdoings** by city officials- a matter of public interest. The alleged audit was directed at ANDERSON and his friends JONES, HICE and another officer M.R.. The scope of the audit was directed at four individuals due to their 'band of brothers.' Although the department had no proof that JONES and HICE or ANDERSON and M.R. sent the email, they still took retaliatory actions; JONES was terminated from his outstanding sixteen-year-old career in law enforcement with RIALTO; HICE was given a letter of reprimand, for 'accessing pornographic sites.' These accusations were false and inaccurate. HICE demanded an investigation and was told that it would only get worse with an investigation. Defendants circumvented the Peace Officers Bill of Rights by by calling the investigation a forensic audit. Defendants then placed HICE on a performance improvement plan, citing to false inaccurate facts.  Moreover, when defendant could not confirm that any of the plaintiffs sent it, they decided to look at Captain KAROL's, so they changed the scope of the audit to 'sergeant and above.' The audit was nothing but an illegal investigation in violation of Plaintiffs' POBR rights.

### Injury:

62.     JONES lost his career, his wages and everything he worked so hard for, for  sixteen years; HICE was stripped of all his collateral assignments, lost all the stipend, was falsely accused of having accessed inappropriate pornographic

web sites on duty, and placed on a performance improvement plan after twenty two years of service.

## CAUSES OF ACTION
## COUNT ONE
### *42 U.S.C. §1983*
### *(First Amendment) –*
### *By Plaintiffs against All Defendants*

63.    Plaintiffs hereby incorporate each and every preceding paragraph as though set forth in full here.

64.    As a direct result of the Plaintiffs exercising their constitutional rights to free speech and freedom of association, they were retaliated against.

65.    Subjecting Plaintiffs to the adverse employment actions, as alleged above was nothing but a retaliatory move intended to punish Plaintiffs for exercising their constitutional right to free association. All the above referenced acts by Defendants against Plaintiff have created a chilling effect on Plaintiff's legitimate political, social and organizational speech and associational activities.

66.    But for speaking up about the lack of integrity and evidence tampering and the 'corruption and wrongdoings within the CITY" and but for their association with ANDERSON, and the "band of brothers" plaintiffs would not have suffered the adverse employment actions as aforementioned.

67.    In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiff under the First and Fourteenth Amendments to the United States Constitution to free expression, association, and assembly. Specifically, Defendants have taken the aforementioned actions against Plaintiffs in direct retaliation for, and in response to the various protected activities of Plaintiff.  The acts of Defendants and each of them were done by Defendants under color of state law. They directly violated and continued to violate Plaintiff's clearly established constitutional and statutory rights.  In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiffs

rights, or at least in conscious, reckless, and callous disregard of Plaintiffs rights and to the injurious consequences likely to result from the violation of said rights. General, special, and exemplary damages are sought according to proof. Punitive damages are sought against the individual defendant DE ANDA, according to proof.

68.    Plaintiff has no plain, speedy nor adequate remedy at law to prevent future violations of his civil rights, and therefore seeks extraordinary relief in the form of permanent injunctions, as hereafter described. Damages alone are inadequate and injunctive relief is sought to command defendants.

## COUNT TWO
### *42 U.S.C. §1983*
### *(Due Process) –*
### *By Plaintiffs against All Defendants*

69.    Plaintiffs hereby incorporate each and every preceding paragraph as though set forth in full here;

70.    Pursuant to the Fourteenth Amendment to the United States Constitution "No state shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws..".

71.    Plaintiffs have a constitutional continued property interest in their public employment. The public employer must afford the public employee constitutionally mandated pre-deprivation and post-deprivation due process hearings.

72.    On February 2, 2017, Chief RANDY DE ANDA at Inland SWAT training, at the Fontana Police Department, stated that he was going to terminate GLEN ANDERSON and terminate CARL JONES and demote or severely discipline CHRISTOPHER HICE.

73.     DE ANDA advised members of the police department that he was going to severely discipline or demote Sergeant HICE. Sgt. HICE was served with a written reprimand dated February 2, 2017, accusing him of having 'accessed inappropriate pornographic web sites' and accusing him of having 'viewed hundreds of pornographic photos and videos.' The written reprimand further stated "based on the number of websites accessed and the video and pictures viewed, it calls into question what kind if any supervision you were providing to your teams during this time.' HICE demanded an investigation as the department did not provide him any proof of such access, and defendants responded that 'it would only get worse,' if an investigation indeed ensued. Defendants called it written reprimand so it could be placed in HICE's personnel file, and to avoid affording him a hearing. Further, the department purposefully placed him on a performance improvement plan, with no basis to justify stripping him of his collateral duties and especially SWAT to humiliate him after all the years of impeccable service.

74.     JONES was not afforded his due process rights as Defendant DE ANDA was **pre-determined** to fire him; DE ANDA orchestrated the entire baseless Internal Affairs against JONES and had already decided to terminate CARL JONES' employment, prior to looking into any evidence or being presented with any evidence. Even when the Sheriff's department and the district attorney's office refused to prosecute JONES, DE ANDA advised members of the police department that he was going to terminate CARL JONES

**COUNT THREE**
*Supplemental State Claims*
*(DFEH-Retaliation) –*
*By Plaintiff JONES  against*
*CITY OF RIALTO and DOES 1 through 20 (inclusive)*

75.     Plaintiffs hereby incorporate each and every preceding paragraph as though set forth in full here;

76.     ANDERSON had filed a claim for harassment based on perceived sexual orientation under the Fair Employment and Housing Act (FEHA). Defendants turned around and went into his private Facebook page and accused him of sexual harassment. JONES was interviewed and testified truthfully on behalf of ANDERSON.

77.     California Government Code Section 12940 (h) makes it an unlawful employment practice to "discharge, expel, or otherwise discriminate against any person" because the person has opposed any practices forbidden under this part or because the person has filed a complaint, "testified, or assisted in any proceeding under this part."

78.     JONES testified truthfully in favor of ANDERSON.

79.     Moreover, JONES filed his own FEHA claim and obtained and served the right to sue letter in or about October 2016.

80.     Defendants, in retaliation thereof, subjected him to an additional investigation and terminated his employment.

81.     As a result, JONES suffered loss of wages and non-economic damages to the point where he was admitted to the hospital. He was witnessing his career being ruined by Defendants for no cause. The pain and suffering and emotional anguish will be determined by the trier of fact at the time of trial.

## COUNT FOUR
### Supplemental State Claims
### (Violation of Peace Officers Bill of Rights) –
### By Plaintiffs  against
### CITY OF RIALTO and DOES 1 through 20 (inclusive)

82.     Plaintiffs hereby incorporate each and every preceding paragraph as though set forth in full here;

83.     The Peace Officer's Bill of Rights (POBR) states in pertinent

part: "*No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal."* Further, " *punitive action means any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment*."

84.     As articulated supra, the scope of the audit, in September 2016, targeted Plaintiffs JONES and HICE and ANDERSON and MR. The audit was an investigation. Defendant characterized it as an audit to circumvent POBR. It further resulted into punitive actions and as such, HICE and JONES should have been afforded their rights under POBR.

85.     JONES was terminated in March 2017, because of  his exercise of his right to free speech, as articulated supra,  and in further retaliation based on the email that discussed corruption within the CITY, that resulted in the alleged 'audit.'

86.     Defendants provided HICE with a letter of reprimand on February 2, 2017; HICE requested an investigation and defendant told him it would only get worse with an investigation.

87.     HICE then received a performance improvement plan wherein the reprimand was listed; HICE was stripped of  his SWAT collateral position and lost his take home car.  The reprimand was a punitive action and HICE should have been afforded the right to face and cross examine his accusers. The termination of JONES' employment was a punitive action and the illegal audit against JONES email was tantamount to an investigation that JONES was not able to participate in nor defend himself against his accusers.

88.     CA Superior  court has  initial jurisdiction over any proceeding

brought by any public safety officer against any public safety department for alleged violations of POBR. (Cal Gov Code Section 3309.5 at subdivision c)

89.     This Court has supplemental jurisdiction over state law claims under 28 U.S.C. §1367.

90.   HICE  seeks a permanent injunction prohibiting the public safety department from taking any punitive action against him and reinstate him to his collateral duties with back pay and at the same seniority level and benefits.

91.   JONES  seeks a permanent injunction prohibiting the public safety department from taking any punitive action against him and reinstate him to his position as a corporal  with back pay and at the same seniority level and benefits

92.   HICE and JONES further seek civil penalties not to exceed twenty-five thousand dollars ($25,000), for each POBR violation, and for reasonable attorney's fees as may be determined by the court, and for actual damages.

VI.

**PRAYER**

WHEREFORE, Plaintiff prays:

1.     For general, special, exemplary according to proof;

2.     For punitive damages against Individual Defendant;

3.     For costs of suit;

4.     For attorneys fees under *42 USC §1988* and otherwise as permitted by law;

5.     For attorney fees under the California Government Code as permitted by law;

///

///

6.      For injunctive relief as described above; and

7.      For other appropriate relief.

Dated:  August 15, 2017                     Respectfully submitted,

                                            RAWA LAW GROUP, APC


                                            ___/s/Zahra Khoury_____
                                            Zahra Khoury
                                            Attorneys for Plaintiffs



### DEMAND FOR JURY

Plaintiff hereby demands a jury trial under F.R. Civ. P., Rule 38 and C.D. Cal. Rule 3.4.10.1.


Dated:  August 15, 2017                     Respectfully submitted,

                                            RAWA LAW GROUP, APC

                                            ___/s/Zahra Khoury_____
                                            Zahra Khoury
                                            Attorneys for Plaintiffs